UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGEL NUNEZ GUDINO, | ) | 1:08-CV-01759 LJO JMD HC |
| Petitioner, | ) ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF |
| v. | ) ) | HABEAS CORPUS |
| KEN CLARK, | ) ) | |
| Respondent. | ) ) | |

Petitioner Angel Nunez Gudino ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to convictions in 1986 for murder, attempted murder, and assault with a deadly weapon. (Answer at 1; Pet. at 2). Petitioner pled guilty pursuant to a plea agreement, in which he received a sentence of fifteen years to life. (Pet. at 2).

Petitioner does not challenge either of his convictions in this action; rather, Petitioner contends that the denial of parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in July 2006 for a parole consideration hearing, violates his constitutional rights. (Pet. at 5).

Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles County Superior Court, challenging the Board's denial of parole. (*See* Answer Ex. A). The Los

1  Angeles County Superior Court issued a reasoned opinion rejecting Petitioner's claims.  (*See* Answer
2  Ex. B).
3         Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal
4  and the California Supreme Court.  (Answer Exs. C, E).  The State appellate and high courts,
5  respectively, issued summary denials of the petitions.  (*See* Answer Ex. D, F).
6         On November 3, 2008, Petitioner filed the instant federal petition for writ of habeas corpus,
7  alleging two grounds for relief.  Respondent filed a response to the petition on February 10, 2009.
8  Respondent admits that Petitioner has exhausted his state remedies and that the instant petition is
9  timely.  (Answer at 2).  Petitioner filed a reply to the Respondent's answer on February 27, 2009.

## FACTUAL BACKGROUND

11        The facts of the commitment offense are considered by the Board in determining whether
12 Petitioner is suitable for parole; thus, the facts are relevant in the Court's inquiry of whether the State
13 court decision upholding the denial of parole was objectively unreasonable.  *See* Cal. Code Regs., tit.
14 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense, taken from the
15 August 2002 Board Report, stating:

> On June 8, 1985, [Petitioner] and Mario Guerra were watching a soccer game as Lanark Park.  According to one witness an argument ensued between the two.  According to other witnesses there was no discussion whatsoever.  Whatever the case, [Petitioner] walked up to Mario Guerra, pulled out a 25 caliber automatic pistol and shot him once through the chest.  As Guerra fell to the ground, [Petitioner] again shot him through the back of the neck.  As Mr. Guerra lay mortally wounded, [Petitioner] started shooting at the crowd of onlookers, which included men, women, and children.  Victim Luis Denis, age 21, was sitting on the grass watching the soccer game whereupon he was shot in the leg by [Petitioner].  Victim Juan Alatore, age 38, heard the gunshots and observed [Petitioner] at the crowd. [Petitioner] subsequently turned toward him and shot him in the lower back.  Witness Amador Sanchez, age 21, observed the above mentioned scenario.  As [Petitioner] fired every round in the pistol he then attempted to reload the weapon by reaching into his left front pocket.  As [Petitioner] pointed the gun at a young boy, witness Amador Sanchez kicked [Petitioner] in the back and attempted to apprehend him. [Petitioner] dropped the gun and tried to flee but was subdued by numerous witnesses.
> Los Angeles Police Department subsequently arrived as did fire department paramedics.  Victim Mario Guerra was pronounced dead at the scene.  Victims Denis and Alatorre were taken to hospitals for medical treatment.  The search of [Petitioner] revealed he had nine 25 caliber bullets in his pocket.  A witness subsequently gave police officers the 25 caliber automatic pistol used in the shooting.  As the [Petitioner] was handcuffed he kept yelling, "I got the fucking Mexican."

(Pet. Ex. A, Parole Hearing Transcript, at 10-11).

**DISCUSSION**

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole. Petitioner is currently incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California. (Pet. at 2). The city of Corcoran is located in Kings County, which is within this judicial district. 28 U.S.C. § 84(b). Thus, the Court has jurisdiction over Petitioner's claims and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

**II.    ADEPA Standard of Review**

All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by AEDPA's provisions. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). While Petitioner does not challenge his underlying conviction, the fact that Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even though he is challenging the denial of his parole).

Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71. As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*

*Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). The Ninth Circuit has further stated that where it is undisputed that federal review is not barred by a State procedural ruling, "the question of which state court decision last 'explained' the reasons for judgement is therefore relevant only for purposes of determining whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly established federal law." *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Thus, a federal habeas court looks through ambiguous or unexplained State court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Id*.

Here, the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court all adjudicated Petitioner's claims. (*See* Answer Exs. B, D, F). As the California Supreme Court and California Court of Appeal issued summary denials of Petitioner's claims, the Court "look[s] through" the court's decision to the last reasoned decision; namely, that of the Los Angeles County Superior Court. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.     Review of Petitioner's Claim

As noted earlier, the dispositive inquiry before this Court is whether the last reasoned decision by the State court was an unreasonable application of clearly established federal law. *See Williams*, 529 U.S. at 407-408 (explaining that where there is no factually on-point Supreme Court

case, the State court's determination is subject to the unreasonable application clause of 28 U.S.C. § 2254). Petitioner contends that the Board's decision in July 2006 deprived him of due process of the law as the decision was not supported by some evidence.

### A.     *Legal Standard for Denial of Parole*

"We analyze a due process claim in two steps. '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary. (Answer at 3-4). The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a State's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003). Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the State's observance of certain procedural safeguards. *See Greenholtz*, 442 U.S. at 12. Respondent contends that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the Board to state their reasons for denial. (Answer at 3). This contention is based on the

argument that the "some evidence" standard does not constitute clearly established federal law and is not applicable to parole denials. (*Id*. at 5). Respondent is correct in one respect; a parole release determination is not subject to all of the due process protections of an adversarial proceeding. *See Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." *Id*. at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). Thus, an inmate is entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and told why "he[/she] falls short of qualifying for parole." *Greenholtz*, 442 U.S. at 16; *see also Pedro*, 825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any of these procedural safeguards.

The Ninth Circuit has consistently recognized that a prisoner's due process rights are implicated where there is no evidence to support the denial of parole. *Irons*, 505 F.3d at 851; *see also Sass*, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" *Sass*, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations and that this same standard of judicial review applies to habeas petitions regarding parole denials. *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. *Hill*, 472 U.S. at 455. Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial of parole. The inquiry of "whether a state parole board's suitability determination was supported by 'some evidence'" is framed by the California statutes and regulations governing parole suitability. *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the

timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080. The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime." Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### B. State Court Decision

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the some evidence standard. *See* 28 U.S.C. § 2254(d)(1). The Superior Court relied primarily on the commitment offense in concluding that there was some evidence to support the Board's finding, that Petitioner posed an unreasonable risk of danger to society.

The California Supreme Court recently held that even where the commitment offense was particularly egregious, reliance on this immutable factor may violate a petitioner's due process rights. *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008). The *Lawrence* court found that the intervening twenty-four years in which petitioner, now age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address the circumstances that led to her criminality, her insight into her past criminal behavior, her expressions of remorse, her realistic parole plans, the support of her family, and numerous institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's commitment offense" no longer probative of "her current threat to

1  public safety, and thus provides no support for the Governor's conclusion that petitioner is
2  unsuitable for parole at the present time." *Id*. at 1226.  Similarly, the Ninth Circuit has previously
3  warned that continued reliance on immutable factors may not comport with the protections of the
4  Due Process Clause.  *See Irons*, 505 F.3d at 854; *Biggs*, 334 F.3d at 917.

5  However, the *Lawrence* court noted that there were some circumstances where reliance on a
6  commitment offense would comport with due process, such as where the conviction offense was so
7  heinous, atrocious, or cruel that the gravity of the crime itself established current dangerousness. *Id*.
8  at 1228.  Furthermore, the *Lawrence* court observed that a discipline-free record while incarcerated
9  does not automatically render the commitment offense unpredictive of current dangerousness.  *Id*.
10 (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in
11 concluding that lack of insight into the commitment offense rendered aggravating factor of the crime
12 probative of petitioner's current dangerousness such that Governor's reversal of parole was neither
13 arbitrary or capricious despite an inmate's discipline-free record during incarceration).

14 Here, the Court finds that the gravity of Petitioner's crime evidences his current
15 dangerousness.  As noted by the State court, the commitment offense was vicious and carried out in a
16 calculated and dispassionate manner.  (Answer Ex. B at 1-2).  The record reflects that Petitioner shot
17 Mr. Guerra in the chest and then fired a second shot in the back of the victim's neck as he fell.  (Pet.
18 Ex. A at 10, 43).  Petitioner then started firing into the crowd of onlookers, which consisted of
19 innocent bystanders, without any provocation.  (Pet. Ex. A at 10-11, 48).  Petitioner emptied his gun
20 at the crowd, injuring two people, before stopping to reload his weapon.  (Id. at 11).  Petitioner had
21 his gun pointed at a child just prior to being subdued by a witness.  (Id).  As noted previously, the
22 bystanders Petitioner shot had done nothing to provoke his assault on them and Mr. Guerra's attack
23 was similarly unprovoked.  While Petitioner claims that Mr. Guerra attacked him with a knife, such
24 an allegation is not supported by the record as no witnesses saw Mr. Gurra use a knife on Petitioner.
25 Thus, the motive for the crime was exceedingly trivial.  *See* Cal. Code Regs., tit. 15, § 2402(c)(1)(E).
26 Petitioner's unprovoked shooting of Mr. Guerra and the other two victims amounted to an execution
27 style murder as Petitioner shot Mr. Guerra twice while Mr. Guerra had no opportunity to defend
28 himself, before turning his weapon on the equally defenseless crowd.  *See* Cal. Code Regs., tit. 15, §

2402(c)(B) (a factor in whether "the prisoner committed the offense in an especially heinous, atrocious, or cruel manner" is "the offense was carried out in a dispassionate and calculated manner, such as an execution style murder"). Lastly, the fact that Petitioner attacked multiple victims also demonstrates the especially heinous and cruel nature of the crime. *See* Cal. Code Regs., tit. 15, § 2402(c)(A).

    The Court also notes that the Board did not rely solely on the commitment offense as the Board noted several other unsuitable factors–including the unfavorable psychological evaluation. The psychologist was unable to make a determination on Petitioner's current dangerousness as Petitioner's version of events, in which he claims Mr. Guerra attacked him with a knife and he did not shoot any bystanders, contained significant discrepancies that prevented such a finding.  (Pet. Ex. A at 29-30).  The psychologist ultimately concluded that Petitioner was deliberately providing a different account of the crime for secondary gain–namely to be found suitable for parole. (Id. at 30). Consequently, the evaluation recommended a longer period of observation.

    While the Board focused on the lack of credibility and truthfulness derived from the psychological report, the Court notes that Petitioner's failure to tell the truth about his commitment offense also evidences an inability to come to terms with the crime.  Petitioner still claims that the shooting of the bystanders and his firing into the crowd was an accident, stating "the bullets just went that direction." (Id. at 15).  Furthermore, Petitioner argued to the Board that his killing of Mr. Guerra was in self-defense despite overwhelming evidence to the contrary.  (Id. at 10-13).  Petitioner even blamed others for his possession of the firearm and for his heavy drinking immediately prior to the incident. (Id. at 12, 20).  The record thus evidences that Petitioner has not accepted responsibility for his crime and is thus likely to repeat the same mistakes in the future.  *See* Cal. Code Regs., tit. 15, § 2402(b) ("past and present attitude towards the crime" is information that shall be considered by the Board).

    Lastly, the Board also noted that Petitioner's participation in self-help, including Alcoholics Anonymous and Narcotics Anonymous, was sporadic and that Petitioner had failed to upgrade vocationally and academically.  Both of these factors illustrate that Petitioner, unlike the inmate in *Lawrence*, has not demonstrated, "extraordinary rehabilitative efforts specifically tailored to address

1  the circumstances that led to her criminality, her insight into her past criminal behavior, her
2  expressions of remorse, her realistic parole plans, the support of her family, and numerous
3  institutional reports justifying parole." In sum, Petitioner's failure to rehabilitate demonstrates that
4  he poses a current risk of danger to society.

5  The Court notes that the "some evidence standard is minimal, and assures that 'the record is
6  not so devoid of evidence that the findings of the disciplinary board were without support or
7  otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). Considering the
8  plethora of evidence that Petitioner posed a current risk of danger to society, the Court cannot say
9  that the State's conclusion, upholding the denial of parole, was objectively unreasonable.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 24, 2009**            /s/ John M. Dixon
                                  UNITED STATES MAGISTRATE JUDGE